United States District Court
for the
Southern District of Florida

| Martese Smith, Plaintiff | ) | |
|---|---|---|
| v. | ) | |
| | ) | Civil Action No. 16-60603-Civ-Scola |
| Ronald Thurston, individually, and Scott J. Israel, Sheriff of Broward County, Defendant. | ) ) ) | |

### Order on Plaintiff's Motion for Partial Summary Judgment

Plaintiff Martese Smith claims that Defendants Ronald Thurston and Scott J. Israel, as Sheriff of Broward County, violated his civil rights when Thurston, a police officer with the Broward County Sheriff's Office, mistakenly suspected Smith of having been involved in a reported domestic dispute. Smith's motion for partial summary judgment is directed to only four of the counts in his eight-count complaint. Two of these counts relate to Thurston's alleged violations of Smith's Fourth Amendment rights (counts one (unlawful detention) and two (unlawful search)); and the other two allege claims of false arrest and false imprisonment against, alternatively, the Sheriff and Thurston (counts five and six respectively). With respect to these counts, Smith's motion addresses only the issue of liability; not damages. Regarding Smith's Fourth Amendment claims, Thurston argues there was no underlying constitutional violation and therefore he is entitled to the shield of qualified immunity. As to the false imprisonment claims, the Defendants submit that the *de minimis* and brief detention was neither unlawful nor unreasonable under the circumstances. Based on the undisputed facts, the Court finds most of Smith's arguments well taken and **grants in part and denies in part** his motion for partial summary judgment (**ECF No. 25**) as detailed below.

1. **Legal Standard**

In ruling upon the Plaintiff's motion for summary judgment, the Court applies the familiar legal standard. "Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (punctuation & citation omitted). "[T]o survive summary judgment, the nonmoving party must . . . make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.*

## 2. Brief Summary of Facts[1]

On March 23, 2012, the Broward Sheriff's Office received a 911 call from a woman who said her sister had texted her, asking her to call the police because she was in the midst of a verbal argument with her boyfriend. (Pl.'s Stmt. of Material Facts ¶ 6, ECF No. 26, 1–2; Defs.' Stmt. of Disputed Material Facts ¶ 6, ECF No. 31.) The caller indicated she was in fear for her sister's safety but did not otherwise provide any specifics. (Defs.' Stmt. ¶ 47; Pl.'s Reply to Defs.' Stmt. ¶ 47, ECF No. 32.) The caller also explained that she was at a different location than her sister, without access to a car, and so she was unable to go check on her sister herself. (Pl.'s Stmt. ¶ 7; Defs.' Stmt. ¶ 7.) The caller further described that her sister, and her sister's boyfriend, were at a large, multi-building, 300- to 400-unit, gated apartment complex in Pompano Beach, Florida. (Pl.'s Stmt. ¶¶ 9, 11; Defs.' Stmt. ¶¶ 9, 11.)

After the initial 911 call, Thurston was dispatched to the apartment complex. (Pl.'s Smt. ¶ 12; Defs.' Stmt. ¶ 12.) At some point he was advised that the caller's sister owned a white Chevy Impala and that the sister's boyfriend was black. (Pl.'s Stmt. ¶ 20; Defs.' Stmt. ¶¶ 20, 52, 54; Pl.'s Reply to Defs.' Stmt. ¶¶ 52, 54.) Once at the complex, Thurston parked near the community clubhouse and, using his cell phone, contacted the 911 caller. (*Id.*) The caller once again relayed that "her sister was having a verbal argument." (Pl.'s Smt. ¶ 16; Defs.' Stmt. ¶ 16.) While on the phone with the caller, who was trying to direct Thurston to her sister's apartment, he saw Smith, a black male, driving a white Chevy Impala coming from a direction that could have coincided with the location of the sister's apartment.[2] (Pl.'s Stmt. ¶ 22; Defs.' Stmt. ¶ 22, 55; Pl.'s Reply to Defs.' Stmt. ¶ 55.) Upon spotting the car, traveling towards him, Thurston angled his cruiser in front of the Impala, placing his passenger side in front of the other car.[3] (Pl.'s Stmt. ¶ 23; Defs.' Stmt. ¶ 23; Pl.'s Reply to Defs.' Stmt. ¶ 55.) According to Thurston's own testimony, his emergency lights were activated, his car was blocking Smith's lane of travel, and Smith "stopped immediately" after Thurston pulled in front of him. (Pl.'s Not., Thurston Dep., ECF No. 27-1, 64:17–65:1.)

---

[1] Unless otherwise noted, the following facts, for the purposes of this summary-judgment motion, are undisputed.

[2] The parties disagree about whether Thurston spotted the car coming directly from the building where the sister lived. But whether the car was coming directly from that building or just coming from that general direction is immaterial to the Court's determination.

[3] The Defendants claim to dispute Smith's version of the stop but it's unclear where the disagreement lies. In disputing Smith's description, which in the Court's eye springs directly from Thurston's testimony, the Defendants state: "Thurston testified that he pulled his patrol car at an angle, placing his driver's side door away from Smith." This does not contradict anything in Smith's account of the initial interaction.

After the stop, Thurston asked Smith to step out and walk towards the front of the Impala. (Thurston Dep. at 80:7–22.) Thurston then conducted "a pat-down search . . . for weapons or contraband." (*Id.* at 81:1–4.) When asked whether he had "any information from any source that [Smith] was armed with a dangerous weapon," Thurston responded, "No." (*Id.* at 81:21–25.) Thurston said he recalled that he thought Smith was wearing shorts and a t-shirt, but noted also that "[a] lot of people wear two and three pair[s] of pants to conceal weapons or contraband." (*Id.* at 82:25–83:4, 85:16–18.) As a result of the pat-down, Thurston found only some money and Smith's identification, all of which he left in Smith's pocket. (Pl.'s Stmt. ¶ 32; Defs.' Stmt. ¶ 32.) At the conclusion of the pat-down, Thurston had Smith put his hands behind his back and then handcuffed him. (Pl.'s Stmt. ¶ 33; Defs.' Stmt. ¶ 33.) Thurston then advised Smith he was going to put him in the back of his patrol car at which point Smith began "bracing, pulling." (Thurston Dep. at 90:9–17.) As Smith tried to pull away, Thurston swept his leg and took him to the ground. (*Id.* at 92:15–19.)

Thurston ultimately charged Smith with resisting arrest and for having an open container of beer in his car. (*Id.* at 90:2–7.) The open-container charge was thereafter dismissed because the infraction occurred on private property. (*Id.* at 124:15–19.) Additionally, it appears that that the state filed a "no information" on the obstruction charge. (*Id.* at 123:7–23.)

### 3. Qualified Immunity Principles

To claim qualified immunity from suit, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). If the public official establishes he was acting in a discretionary capacity, the burden shifts to the plaintiff "to show that qualified immunity is not appropriate by satisfying a two-part inquiry": (1) that the official "violated a constitutional right"; and (2) that the "right was clearly established at the time of the incident." *Id.* The law requires that the right is "clearly established" to ensure that the public official is on notice that his conduct is unlawful before he is subjected to a suit. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

In this case the parties do not dispute that Thurston was engaged in a discretionary duty during the events at issue in this case. The Court therefore focuses its analysis on whether Smith has carried his burden of satisfying the two-part inquiry described above with respect to both the initial stop as well as the ensuing pat down.

### A. Thurston is entitled to qualified immunity with respect to the investigatory stop at issue in count one.

Although the Court concludes that, indeed, Thurston violated Smith's constitutional rights during the initial stop, Smith has not carried his burden in showing that the right was clearly established.

### (1) Thurston's initial interaction with Smith amounted to an investigatory stop that was not supported by reasonable suspicion.

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). When an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," a court "may [] conclude that a 'seizure' has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). Because of its limited nature, however, a traffic-stop seizure is "more analogous to an investigative detention than a custodial arrest." *Id.* As such, a traffic stop need not be supported by probable cause but instead requires only the much less demanding showing of reasonable suspicion. *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). This "reasonable suspicion" must be "supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.* at 7. That is, an officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Id.* (quoting *Terry*, 392 U.S. at 27). Instead, there must be "some minimal level of objective justification" for the stop. *INS v. Delgado,* 466 U.S. 210, 217 (1984). Lastly, such a stop can be based on an officer's reasonable suspicion that either a suspect is involved in an ongoing, or imminent, crime or a crime that has already been completed. *U.S. v. Hensley*, 469 U.S. 221, 227 (1985). Of course, where a suspected crime has already been completed, and no unlawful activity is detected at the time of the stop, certain exigencies related to public safety and ongoing criminal activity are no longer at issue. *Id.* at 228. In such a case, the seriousness of the completed crime may affect the balancing between the government's "interest in investigating possible criminal conduct based on an officer's reasonable suspicion" and a suspect's "Fourth Amendment interest . . . in remaining secure from the intrusion." *See United States v. Grigg*, 498 F.3d 1070, 1075 (9th Cir. 2007); *Hensley*, 469 U.S. at 229.

Here, there does not appear to be any real dispute that Thurston's blocking of Smith's car was indeed an investigatory stop. Thurston describes Smith as "stopp[ing] immediately," upon the activation of his flashing red and blue lights as Thurston pulled his cruiser directly in front of the path of the Impala. (Thurston Dep. at 61:10–11, 64:13–16, 64:25–65:1). The Defendants have offered nothing to rebut the obvious conclusion that this interaction

amounted to an investigatory stop. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) ("stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief").

The next issue then is whether Thurston had reasonable suspicion to support making the stop. The Court finds he did not. To begin with, there were no exigent circumstances by the time Thurston stopped Smith. Thurston says he could see that there was only one person in the Impala—therefore there was no concern that there was an ongoing domestic dispute. *See Fuentes v. State*, 24 So. 3d 1231, 1236 (Fla. 4th DCA 2009) (finding a lack of reasonable suspicion in part because the two people in a car were not physically attacking each other or otherwise engaging in illegal or suspicious activity when spotted by an officer responding to a domestic-dispute call); *Thomas v. Dillard*, 818 F.3d 864, 882 (9th Cir. 2016), *as amended* (May 5, 2016) (citing another case for the proposition that, when responding to a domestic violence call, an officer's "safety concerns . . . are diminished when the dispute appears to have concluded by the time the officers arrive on scene").

Further, there was no information that a crime had actually been committed. The 911 caller only advised that her sister had asked her to call the police because she, the sister, was having an argument with her boyfriend. The sister also informed that she would have gone to check on her sister herself but she did not have access to a car. The Court can discern nothing more than a series of hunches that could have led Thurston to infer that a crime had been committed by the time he saw Smith driving towards him in the Impala. For example, Thurston would have had to assume that, between the time the sister had texted the caller and the time that he first saw Smith, the alleged verbal dispute had actually escalated into domestic violence, or threatened domestic violence, and that the boyfriend had been the aggressor. By the time of the stop, however, there was no report that, for example, the boyfriend had in fact threatened the caller's sister, or that the boyfriend had access to a weapon, or that the boyfriend had a history of domestic violence. The only information that supported the possibility of a crime was the caller's own concern that she was in fear for her sister's safety. However, even if this non-eyewitness's unsupported fear established a potential threat to her sister's safety, "suspicion of 'domestic violence' alone" cannot "provide[] sufficient justification for a given police intrusion." *Dillard*, 818 F.3d at 882. In the end, the Court finds that Thurston has not been able to articulate anything more than an "inchoate and unparticularized" hunch that criminal activity may have been afoot.

Although the Court is mindful of the seriousness and reprehensibility of domestic abuse, the totality of the circumstances in this case are not such that

Thurston had reasonable suspicion to support his investigatory stop of Smith. Even by Thurston's own admission, at no time had he "ascertain[ed] whether any criminal conduct" had occurred between the caller's sister and the sister's boyfriend. (Thurston Dep. at 51:24–52:2.) In fact, even after determining that Smith was not associated with the caller's sister, Thurston did not see fit to issue a BOLO or even ascertain the name of the boyfriend who was actually the subject of the call. (*Id.* at 51:14–52:2.) Thurston fully acknowledged that there was never any information provided that the incident was anything more than a verbal argument. (*Id.* at 71:4–7.) Under the totality of the circumstances, there must be something more for an officer to form a reasonable suspicion that an investigatory stop is warranted. *Compare with, e.g., United States v. Williams*, 796 F.3d 951, 957 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1450 (2016) (concluding an investigatory stop was permissible where the suspect was in a car associated with a person who was wanted for first-degree domestic assault and who was reported to be armed and dangerous); *United States v. Dotson*, 102 Fed. App'x. 508, 512 (7th Cir. 2004) (unpublished), *cert. granted, judgment vacated on other grounds*, 543 U.S. 1110 (2005) (finding reasonable suspicion where an officer had himself witnessed the suspect engaged in a physical altercation, a bystander reported that the fight was a domestic dispute and that the suspect had a gun, and the suspect fled the scene upon the arrival of the police); *United States v. Williams*, 57 Fed. App'x. 151, 151–52 (4th Cir. 2003) (unpublished) (finding reasonable suspicion where the officers had information that, in addition to being involved in a "domestic altercation," a suspect possessed guns during the altercation, had previously hit his girlfriend, had guns in his vehicle which he was looking to discard, and attempted to evade the police); *United States v. Camacho*, 8:09CR56, 2009 WL 2421744, at *1 (D. Neb. July 21, 2009) (finding no constitutional violation where the police stopped a suspect driving an orange truck which matched the truck described as carrying a person who was involved in a domestic disturbance where a man with a baseball bat had threatened a woman and shot a gun towards the house).

  Of course the last thing the Court wants to do is discourage the police from thoroughly investigating concerns related to domestic disputes. In this case, however, the investigation of the incident appears to have been actually hampered by Thurston's unsupported stop of Smith. While conducting the stop on Smith who in the end had no association with the caller's sister, based on what ultimately amounted to only a hunch, the actual domestic disturbance went unattended. Thus, the Court's decision should not be read to dissuade such investigations but instead to caution officers from prematurely stopping a

suspect, in the absence of exigencies, at the expense of the investigation of the actual disturbance itself.

### (2) Smith has failed to carry his burden of showing that this right was clearly established at the time of the investigatory stop.

On the other hand, Smith has not carried his burden of showing that this right was clearly established at the time of Smith's stop. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291-92 (internal citations omitted). A court must undertake this analysis "in light of the specific context of the case, not as a broad general proposition." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In the Eleventh Circuit only decisions from this circuit, the United States Supreme Court, or the highest court of the state where the case arose are controlling in determining whether the law has been clearly established. *Vinyard v. Wilson*, 311 F.3d 1340, 1348 n. 11 (11th Cir. 2002); *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 (11th Cir. 1997).

Here, with respect to the investigatory stop, Smith has not presented any controlling precedent "with indistinguishable facts clearly establishing the constitutional right" at issue here. Nor has he set forth "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Finally, to the extent Smith attempts to establish "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," the Court finds his arguments unavailing.

While Smith's general statement that a seizure without individualized suspicion violates the Fourth Amendment is true, it says nothing about whether the investigatory stop in this case so clearly violated Smith's rights that "no reasonable officer could have believed that [his] actions were legal." *Watts v. City of Miami*, 16-15383, 2017 WL 526042, at *3 (11th Cir. Feb. 8, 2017) (quoting *Lee,* 284 F.3d at 1199). While the Court indeed finds Thurston's stop of Smith to have been improper, it reached that conclusion based on a review of a number of cases from other jurisdictions all with facts quite dissimilar from those here. There is no broad or overarching rule articulated in those cases clearly establishing that the investigatory stop in this case violated Smith's constitutional rights. In short, Smith has failed to show that no reasonable officer in Thurston's position could have believed that he had

reasonable suspicion to stop Smith. *Watts*, 2017 WL 526042 at *3. Thurston is therefore entitled to qualified immunity with respect to count one.

### B. Thurston is not entitled to qualified immunity with respect to his pat-down search of Smith.

Thurston's pat-down search of Smith violated a clearly established constitutional right. A frisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Terry*, 392 U.S. at 17. In order to justify a pat-down search during a traffic stop, (1) the stop must be lawful and (2) an officer "must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Here, neither condition is satisfied.

As detailed above, in section 3.A.(1), Thurston's stop of Smith was not lawful. However, even if the stop had been warranted, the Court finds that there is there is no genuine dispute that Thurston did not reasonably suspect that Smith was armed and dangerous. First, when asked whether he had "any information from any source that [Smith] was armed with a dangerous weapon," Thurston responded, without equivocation, "No." (Thurston Dep. 81:22–25.) The only support that Thurston has offered to support the reasonableness of his suspicion that Smith was armed and dangerous is that "[a] lot of people wear two and three pairs of pants to conceal weapons or contraband" (*Id.* at 85:16–18; Defs.' Resp. at 6.) To begin with, Thurston has not presented any evidence or caselaw suggesting that wearing multiple pairs of pants alone necessarily results in a reasonable suspicion that a suspect is armed and dangerous. Second, in any event, as best as Thurston was able to remember, he recalled Smith's wearing shorts (Thurston Dep. 83:1–4) and, it appears, only one pair at that. In the end, Thurston has not made a showing sufficient to permit a jury to find that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Hunter,* 291 F.3d 1302, 1307 (11th Cir.2002); *compare with, e.g., United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009) (finding reasonable suspicion to support a pat down where the officer "smelled marijuana and alcohol, and the driver argued with him at the initiation of the stop"); *United States v. Pantoja-Soto*, 768 F.2d 1235, 1236 (11th Cir. 1985) (finding that a "bulge under [a suspect's] shirt" supported an officer's *Terry* search); *United States v. Packer*, 375 F. App'x 976, 979 (11th Cir. 2010) (finding reasonable suspicion that a suspect is armed and dangerous where (1) the suspect was stopped in a neighborhood known for high drug trafficking; (2) the officer himself observed the suspect engage in what appeared to be a drug

transaction; (3) the officer received a tip that drugs were coming into the area; (4) the suspect tried to prevent the officer from looking in his car; (5) the officer saw an open beer can within reach of the driver; (6) the suspect lied to the officer; (7) based on his experience, the officer was aware that people who trafficked in drugs also carried weapons); *United States v. Hollins*, 336 F. App'x 921, 923 (11th Cir. 2009) (finding a *Terry* search warranted where a suspect (1) repeatedly refused to follow an officer's instructions to keep his hands in plain view, exit the car, or face the car once he had exited; (2) slid his hands toward his waist while seated in the car; and (3) attempted to strike the officer in an attempt to flee).

Additionally, the Court further finds that the pat-down search in this case so clearly violated Smith's rights that "no reasonable officer could have believed that [his] actions were legal." *Watts*, 2017 WL 526042 at *3 (quoting *Lee,* 284 F.3d at 1199). As such, Thurston is not entitled to qualified immunity with respect to count two. Further, Smith has affirmatively shown the absence of a genuine issue of material fact with respect to count two. In response, Thurston has failed to "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Smith is therefore granted summary judgment, as to liability, on count two.

### 4. False imprisonment

In counts five and six, Smith seeks relief, against Thurston and the Sheriff respectively, for state-law claims of false arrest and false imprisonment. In his motion for partial summary judgment, Smith pursues summary judgment on these counts only with respect to "whether he was subjected to temporary detention," amounting to false imprisonment, "in the absence of reasonable suspicion." (Pl.'s Mot. at 1–2.) On this narrow issue, the Court finds in Smith's favor.

Under Florida law, a plaintiff must establish the following to sustain an action for false imprisonment: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006). Here, Smith has established that (1) the initial *Terry* stop by Thurston, an employee of the Sheriff's, was unlawful: as set forth in section 3.A.(1), Thurston's initial stop of Smith amounted to an investigatory stop that was not supported by reasonable suspicion. (2) Smith was detained against his will: Thurston interrupted his movement by flashing his emergency lights and by angling his cruiser directly in front of Smith's car's lane of travel. Because

neither reasonable suspicion nor even arguable reasonable suspicion supported the stop, Smith's detention was effected (3) without legal authority. Lastly, based on the totality of the circumstances, (4) the detention was unreasonable and unwarranted.

In order to successfully oppose a properly presented motion for summary judgment, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmovant's evidence must be significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* Here, in opposition to Smith's motion on the false imprisonment issue, the Defendants counter only that: "the undisputed facts demonstrate that Thurston had reasonable suspicion sufficient to briefly detain Smith in order to obtain and determine his identity and to locate a potential domestic violence victim." This does not in any way establish that there is sufficient evidence upon which a reasonable juror could find in favor of the Defendants on whether the investigatory stop amounts to Florida false imprisonment. The Court therefore grants summary judgment in Smith's favor on this narrow issue, without opining on either damages or how state sovereign immunity might affect Smith's claims.

### 5. Conclusion

Based on the above analysis, the Court **grants in part and denies in part** Smith's partial motion for summary judgment (**ECF No. 25**). Thurston is entitled to qualified immunity as to count one. He is not, however, entitled to such immunity as to count two and the Court grants partial summary judgment on this count in Smith's favor as to liability only. The Court also grants partial summary judgment in Smith's favor as to counts five and six on the narrow issue of whether Thurston falsely imprisoned Smith during his initial traffic stop. The Court has made no determination regarding the applicability of Florida sovereign immunity as to counts five or six.

**Done and ordered** at Miami, Florida on June 29, 2017.

_____
Robert N. Scola, Jr.
United States District Judge